### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KAITLYN TRIMBLE, *individually, and on behalf of all others similarly situated,* | * | |
| | * | |
| *Plaintiffs,* | | |
| v. | * | Civil Action No. RDB-24-3710 |
| ENTRATA, INC., | * | |
| *Defendant.* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### <u>MEMORANDUM OPINION</u>

This putative class action arises from a contract between Plaintiff Kaitlyn Trimble ("Plaintiff" or "Trimble") and Defendant Entrata, Inc. ("Defendant" or "Entrata"), which operated an online portal that Trimble utilized to pay her residential rent between 2023 and 2024. (ECF No. 2 ¶ 15.) On October 29, 2024, Trimble initiated this action against Entrata in the Circuit Court for Prince George's County, Maryland, by filing a six-count Class Action Complaint seeking a declaratory judgment, equitable and injunctive relief, and damages. (ECF No. 2.) Specifically, Trimble seeks a declaratory judgment under Maryland law that Entrata violated the Maryland Collection Agency Licensing Act ("MCALA") (Count I); and alleges violation of the Maryland Consumer Debt Collection Act ("MCDCA") (Count II); violation of the Maryland Consumer Protection Act ("MCPA") (Count III); an equitable claim for money had and received (Count IV); unjust enrichment (Count V); and negligence (Count VI). (*Id.* at 30–39). On December 20, 2024, Entrata timely removed the action to this Court, invoking this Court's diversity jurisdiction pursuant to the Class Action Fairness Act

("CAFA"), 28 U.S.C. §§ 1332(d), 1453.[1]  *See* (ECF No. 1 at 1–2.)

Presently pending before this Court are two motions.  First is Entrata's Motion to Stay Proceedings and Compel Arbitration (ECF No. 4) ("Motion to Compel Arbitration" or "Entrata's Motion").  Trimble has responded in opposition (ECF No. 13), and Entrata has replied (ECF No. 16).  Additionally, Trimble filed two supplemental Notices (ECF Nos. 18, 21).  Entrata responded (ECF No. 19) to Trimble's initial notice, and Trimble replied (ECF No. 20).[2]  Second is Trimble's Motion to Remand to the Circuit Court for Prince George's County, Maryland (ECF No. 8).  Entrata has responded in Opposition (ECF No. 12), and Trimble has replied (ECF No. 17).  In her Reply, Trimble withdrew her Motion to Remand (ECF No. 8).  *See* (ECF No. 17 at 1.)  The parties' submissions have been reviewed, and no hearing is necessary.  Loc. R. 105.6 (D. Md. 2025).  For the reasons that follow, Trimble's Motion to Remand (ECF No. 8) is WITHDRAWN AS MOOT, and Entrata's Motion to Compel Arbitration (ECF No. 4) is DENIED.

## BACKGROUND

Entrata operates ResidentPortal,[3] an online payment management portal that landlords and property managers may use to collect residential rent.  (ECF No. 2 ¶¶ 36, 44–46.)  While

---

[1] The Class Action Fairness Act ("CAFA") grants federal courts original jurisdiction to hear a class action "if the class has more than 100 members, the parties are minimally diverse, and the '"matter in controversy exceeds the sum or value of $5,000,000."'  *See, e.g., Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 590 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

[2] Under Local Rule 105.3(a), "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."  Loc. R. 105.3(a) (D. Md. 2025).  Although the Court has reviewed all the parties' filings, no party requested permission to file surreply as to Entrata's Motion to Compel Arbitration (ECF No. 4), and the Court primarily draws the parties' arguments as to that Motion from their initial briefing (ECF Nos. 4, 13, 16).

[3] Trimble's Complaint refers to the online portal through which she paid rent as "ResidentPay," but the parties' briefing of Entrata's Motion to Compel Arbitration refers to the online portal as "ResidentPortal."  *Compare* (ECF No. 2 ¶ 42) *with* (ECF No. 4 at 1; ECF No. 13 at 21; ECF No. 13 Ex. 2.)  For consistency, the Court adopts the naming conventions used in the parties' briefing and refers to the online portal as "ResidentPortal."

residing at Lynn Hill apartments, an apartment complex in Linthicum Heights, Maryland, Trimble utilized ResidentPortal to make six or seven rent payments  (*Id.* ¶¶ 102–118; ECF No. 4 at 1, 6 n.6.)    Each of these payments consisted of a residential rent charge and a "Convenience Fee" that Entrata collected.  (ECF No. 2 ¶¶ 106–116.)  Before Trimble could finalize these payments, she had to agree to Entrata's Terms and Conditions ("Terms") by checking a box at the bottom of the screen that stated, "I agree to the fees listed and have read and accept the terms & conditions."[4]  (ECF No. 4 at 5; ECF No. 4-2 at 2.)  The Terms were hyperlinked immediately below the checkbox and statement of agreement.  (ECF No. 4 at 5; ECF No. 4-2 at 2); *see also* (ECF No. 4-3 at 2 (2024 version of payment submission page)). Although users could not click the button to submit or finalize their payments until they had checked the box stating their agreement to the Terms, they were not required to click on, scroll through, or otherwise review the hyperlinked Terms.  *See* (ECF No. 4-1 ¶¶ 11–12, 18–20 (explaining requirement that users had to check box before they could click the button to submit or finalize their payment)).

As relevant to Trimble's Complaint (ECF No. 2) and Entrata's Motion to Compel Arbitration (ECF No. 4), the Terms provided, "[t]hese terms and conditions of use are a

---

[4]  During the period in which Trimble used ResidentPortal to pay her rent, the language next to the check box she had to click to finalize her payment varied slightly.  At some point in 2024, Entrata updated the language such that it stated, "I agree to the fees listed and have read and accept the Payment Terms & Conditions." (ECF No. 4-3 at 2); *see also* (ECF No. 4-1 ¶¶ 7, 14 (Declaration of Jamis Gardner, Chief Legal Counsel for Entrata explaining change in language on ResidentPortal)).  Along with this change, the button users had to click to submit their payments changed from a button stating, "Finalize Payment" to a button stating, "Submit Payment."  (ECF No. 4-2 at 2; ECF No. 4-3 at 3.)  Additionally, rather than have a separate hyperlink to the Terms below the check box, the updated 2024 language hyperlinked the words "Payment Terms & Conditions" directly in the statement of agreement next to the check box.  *Compare* (ECF No. 4-2 at 2 (2023–2024 version)) *with* (ECF No. 4-3 at 2 (2024 version)).  In both versions, however, users could not submit or finalize their payment until they had clicked the check box stating that they agreed to the Terms and Conditions, which were hyperlinked on the same page.

binding contract between Entrata, Inc. ("Entrata"), the legal entity that owns or manages the property displayed on this website . . . and you . . . ."  (ECF No. 4-4 at 2.)  It then states, "[b]y using the Site, You agree to the following . . .," (*id.*), and provides four provisions of particular relevance to the parties' pending Motions: (1) a provision titled "Dispute Resolution" (*id.* at 14–15 ¶ 14) ("Arbitration Provision"); (2) a provision titled "Changes to the Agreement", (*id.* at 4 ¶ 3) ("Change Clause"); (3) a provision titled "Indemnity," which contains an exculpatory clause, (*id.* at 12 ¶ 9.4) ("Exculpatory Clause"); and (4) a provision titled "Agreement to Deal Electronically; Electronic Communications and Notices," (*id.* at 1 ¶ 1) ("Agreement and Notices Clause").  Accordingly, when ResidentPortal users clicked the check box stating their agreement to the Terms such that they could click the button to submit or finalize their rent payments, they agreed to each of these four provisions.  (*See id.*; ECF Nos. 4-5, 4-6.)

Under the Arbitration Provision, which appears on page fourteen of the Terms, "[a]ny controversy or claim arising out of or relating to the use of the services on this site, the relationship resulting from the use of such services, or a breach of any duties hereunder will be settled by Arbitration . . . ."  (ECF No. 4-4 at 14 ¶ 14.)  The Change Clause appears on the fourth page of the Terms, several pages before the Arbitration Provision, and provides "[a]t the [ResidentPortal], [users] are bound by the version of this Agreement that is in effect on the date of [their] visit.  This Agreement may change from time to time, so please review it when you visit [ResidentPortal]."[5] (*Id.* at 4 ¶ 3.)  The Exculpatory Clause appears on the twelfth page of the Terms, and states, in part, "[a]ny claim or legal action arising out of disputes,

---

[5] In accordance with the definitions provided in the Terms, *see* (ECF No. 4-4 at 2), the Court replaces contractual language referring to "the Site" with "ResidentPortal," because that is the Site that Trimble used in this case.

failures, misrepresentations, malfunctions, or defects shall be waived . . . ." (*Id.* at 12 ¶ 9.4.) Finally, the Agreement and Notices Clause appears on the third page of the Terms and informs users, in part:

> . . . Except as otherwise provided in these Terms, we will give you any notices regarding [ResidentPortal] by posting them on [ResidentPortal] . . . You must check [ResidentPortal] for notices, and you will be considered to have received a notice when it is posted on [ResidentPortal], or when sent by us via electronic mail, whether or not received by you . . . .

(*Id.* at 3 ¶ 1.)

As noted above, Trimble utilized ResidentPortal to make six or seven residential rent payments, including six separate Convenience Fee payments Entrata collected with each rent payment, between 2023 and 2024.[6]  (ECF No. 4 at 6 n.6; ECF No. 2 ¶¶ 106–119.)  Each time Trimble visited ResidentPortal to make a rent payment, final submission of her payments comprised at least two steps.  (ECF No. 4-1 ¶¶ 6–27.)  First, she had to click the check box indicating that she agreed to the Terms, which were provided on the same screen via hyperlink. (*Id.*)  Second, after clicking the check box that she agreed to the Terms, she had to click a separate, larger button to "Submit" or "Finalize" her payment.  (*Id.*)  Trimble alleges that Entrata acted as an unlicensed rent collector and improperly collected Convenience Fee payments from users who paid their rent using a debit or credit card, while allowing users who

---

[6] Although the parties generally agree that Trimble made several separate rent payments through ResidentPortal between 2023 and 2024, they slightly dispute the exact dates of the payments and the number of payments. Trimble alleges that she made six one-time payments, one on each of the following dates: July 6, 2023; August 2, 2023; August 21, 2023; February 21, 2024; July 1, 2024; and July 11, 2024.  (ECF No. 2 ¶¶ 108, 110, 112, 114, 116.)  Entrata asserts that its records indicate that Trimble made seven one-time payments, one on each of the following dates: June 26, 2023; July 26, 2023; August 2, 2023; August 22, 2023; February 21, 2024; July 2, 2024; and July 11, 2024.  (ECF No. 4 at 6 n.6 (citing ECF No. 4-1 ¶ 26).)  This factual dispute is not material to the pending motions, which depend on the language of the Terms.

opted to pay rent using slower direct-deposit or "ACH" payment methods to avoid such fees. (ECF No. 2 ¶¶ 9–11, 29–30, 36, 42, 62, 86–122.)

On October 29, 2024, Trimble filed a Class Action Complaint against Entrata in the Circuit Court for Prince George's County, Maryland, in which she alleged six state-law claims: (1) a claim for declaratory relief under the Maryland Declaratory Judgment Act, MD. CODE ANN., CTS. & JUD. PROC. § 3-406, based on alleged violations of the Maryland Collection Agency Licensing Act ("MCALA") (Count I); (2) violation of the Maryland Consumer Debt Collection Act ("MCDCA"), MD. CODE ANN., COM. LAW §§ 14-201 *et seq.* (Count II); (3) violation of the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW §§ 13-301(14)(iii), 13-303(5) (Count III); (4) money had and received (Count IV); (5) unjust enrichment (Count V); and negligence (Count VI). (ECF No. 2.) On December 20, 2024, Entrata removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. (ECF No. 1 at 1.)

Subsequently, Entrata moved to Stay Proceedings and Compel Arbitration (ECF No. 4) pursuant to the Terms' Arbitration Provision. (*Id.* at 8.) Trimble responded in Opposition (ECF No. 13), arguing that no agreement to arbitrate was ever formed and, even if one were formed, it is unenforceable. (*Id.* at 8-9.) Entrata timely filed a Reply (ECF No. 16). On December 27, 2024, Trimble filed a Motion to Remand (ECF No. 8), arguing that this Court lacks jurisdiction under CAFA. (*Id.* at 1.) Entrata responded in Opposition (ECF No. 12), and Trimble filed a Reply (ECF No. 17) in which she withdrew her Motion to Remand. On March 14, 2025, Trimble filed a Notice of supplemental authority (ECF No. 18) as to Entrata's Motion to Compel Arbitration. Entrata then responded (ECF No. 19) and Trimble replied

(ECF No. 20). Finally, Trimble filed another Notice of supplemental authority (ECF No. 21) on June 23, 2025. This matter is now ripe for review.

## STANDARD OF REVIEW

### I.    Motion to Remand

A defendant in a state civil action may remove the case to federal court only if the federal court can exercise original jurisdiction over at least one of the asserted claims. 28 U.S.C. § 1441(a)–(c). Once an action is removed to federal court, the plaintiff may file a motion to remand the case to state court if there is a contention that jurisdiction is defective. *Id.* § 1447(c). It is well established that the party seeking removal bears the burden of establishing jurisdiction in the federal court. *Johnson v. Advance Am.*, 549 F.3d 932, 935 (4th Cir. 2008). On a motion to remand, this Court must "'strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court.'" *Richardson v. Phillip Morris, Inc.*, 950 F. Supp. 700, 701–02 (D. Md. 1997) (citation omitted); *accord Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815–16 (4th Cir. 2004); *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("If federal jurisdiction is doubtful, a remand is necessary.").

### II.    Motion to Compel Arbitration

As Judge Chuang of this Court has previously explained, "Judges in this District have recognized that 'motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment.'" *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (quoting *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013)). The U.S. Court of Appeals for the Fourth Circuit has held that the movant's burden in a motion to compel arbitration is "akin to the burden on summary judgment."

*Galloway v. Santander USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016). Accordingly, a motion to compel arbitration must be granted where the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## ANALYSIS

### I.    Trimble's Motion to Remand

Entrata has met the requirements of Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453 such that this Court has diversity jurisdiction over this putative class action. The Class Action Fairness Act ("CAFA") relaxes traditional diversity jurisdiction requirements to grant federal courts original jurisdiction to hear a class action "if the class has more than 100 members, the parties are minimally diverse, and the '"matter in controversy exceeds the sum or value of $5,000,000.'" *See, e.g., Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 590 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)). In her Motion to Remand (ECF No. 8), Trimble claims that Entrata failed to satisfy the requirements of CAFA by failing to "plausibly allege and prove that the Class *defined in the complaint* involves more than 100 putative Class members and $5 million in controversy." (ECF No. 8-1 at 2, 4) (emphasis in original). In its Opposition, Entrata provided an affidavit asserting that "approximately 58,760 people paid [Entrata] a

convenience fee . . . [and] that these convenience fees totaled to $12,996,719.30." (ECF No. 12 at 2; ECF No. 12-1.) In Reply, Trimble withdrew her Motion to Remand (ECF No. 17) because Entrata's "statements under oath establish that federal jurisdiction exists over this case pursuant to CAFA . . . ." (*Id.* at 1.) Entrata has met its burden under CAFA, and Trimble's Motion to Remand (ECF No. 8) is WITHDRAWN AS MOOT. *See Johnson*, 549 F.3d at 935.

## II. Entrata's Motion to Stay Proceedings and Compel Arbitration Pursuant to the Federal Arbitration Act

The Federal Arbitration Act ("FAA") governs disputes over whether to compel arbitration. 9 U.S.C. §§ 1–16. Under the FAA:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

*Id.* § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

As such, a federal court must compel arbitration and stay "any suit or proceeding" where: (1) a dispute exists between the parties, (2) there is a written agreement with an arbitration provision claimed to cover the dispute, (3) the transaction involves commerce, and (4) one party is refusing or neglecting to arbitrate. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("[A] district court therefore has no choice but to grant a motion to compel arbitration where a valid

arbitration agreement exists and the issues in a case fall within its purview.'"); 9 U.S.C. § 3 (obligating court to stay "any suit or proceeding" governed by arbitration "until such arbitration has been had in accordance with the terms of the agreement"); *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) (requiring stay where arbitration provision governs).  Even so, "courts will not blindly apply the presumption in favor of arbitrability."  *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 104 (4th Cir. 2012).  Ultimately, "the party seeking to compel arbitration . . . 'bears the burden of establishing the existence of a binding contract to arbitrate.'"  *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 151 (4th Cir. 2025) (quoting *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024)).

In its Motion to Compel Arbitration, Entrata argues that the requirements to compel arbitration have been met, and Trimble must pursue her claims pursuant to the Terms' Arbitration Provision.  (ECF No. 4 at 9.)  In Opposition, Trimble challenges arbitration on two bases: formation and enforceability.[7]  First, she contends that no valid arbitration agreement was ever formed.  (ECF No. 13 at 24.)  Specifically, she asserts that under Maryland law formation of a valid agreement to arbitrate requires separate consideration, most often in the form of a mutual promise to arbitrate.  (*Id.*)  Trimble argues that under the Terms' Change Clause, however, Entrata retained a unilateral right to alter the parties' agreement without notice—including a right to withdraw its promise to arbitrate—which renders illusory Entrata's

---

[7] Trimble first argues that the Arbitration Provision could not be enforced under the prospective waiver doctrine. (ECF No. 13 at 16.)  Second, she argues that no valid agreement was ever formed.  (*Id.* at 24.) Formation of an agreement to arbitrate is a threshold issue that the Court must address before evaluating enforceability.  *See Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 175–77 (4th Cir. 2025) (distinguishing challenges to formation from challenges to validity).  Accordingly, the Court reorders Trimble's argument to reach the issue of formation first.

purported promise to arbitrate.  (*Id.*)  Accordingly, Trimble asserts that the Arbitration Provision lacks consideration such that the parties never formed an agreement to arbitrate.  (*Id.*)  Second, Trimble contends that any arbitration agreement is unenforceable because the Terms' Exculpatory Clause violates the prospective waiver doctrine, which invalidates arbitration agreements that purport to insulate one party from statutory liability.  (*Id.* at 16.)

In Reply, Entrata argues that the Change Clause does not render illusory its mutual promise to arbitrate because it "did not have a unilateral right to change [the] agreement." (ECF No. 16 at 11.)  Accordingly, Entrata asserts that the parties properly formed an agreement to arbitrate based on consideration in the form of a mutual promise to arbitrate.  (*Id.*)  In addition, Entrata argues that the Terms' Exculpatory Clause does not prevent the Arbitration Provision from being enforced.  (*Id.* at 6.)  In a subsequent Notice, Trimble asserts that the United States Court of Appeals for the Fourth Circuit's recent decision in *Johnson v. Continental Finance Company, LLC*, 131 F.4th 169 (4th Cir. 2025), *petition for cert. filed* (U.S. July 10, 2025) (No. 25-34), bolsters her argument that the Change Clause renders illusory Entrata's promise to arbitrate.  (ECF No. 18 at 1.)  Entrata attempts to evade *Johnson* by arguing that it does not apply because Trimble agreed to the Terms via browsewrap or clickwrap.[8]  (ECF No. 19 at 2 (citing *Johnson*, 131 F.4th 169).)  Trimble contends that *Johnson* pertains to online agreements

---

[8] Clickwrap agreements require a customer to affirmatively click a box on the website acknowledging receipt of and assent to the contract terms before he or she is allowed to proceed using the website.  *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 669 (D. Md. 2009)).  Courts uphold a clickwrap agreement so long as it reasonably communicates the existence of the contract terms.  *Lyles v. Chegg, Inc.*, Civ. No. RDB-19-3235, 2020 WL 1985043 (D. Md. Apr. 27, 2020) (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) (collecting cases)).  "A clickwrap agreement differs from a 'browsewrap agreement,' which does not require a user to click a box or button indicating that he or she agrees to certain terms to use the website, but instead attempts to bind the user to hyperlinked terms simply through using the website."  *Gordon v. Zeroed-In Tech., LLC*, Civ. No. BAH-23-3284, 2025 WL 941365, at *9 (D. Md. Mar. 26, 2025) (quoting *Am. Eagle Motors, LLC v. Copart of Connecticut, Inc.*, 2023 WL 123503, at *3 (E.D. Va. Jan. 5, 2023) (citation omitted)).

(ECF No. 20 at 1.)⁹  As explained further below, *Johnson* controls in this matter, and the parties did not form an agreement to arbitrate.

### A.  No Valid Agreement to Arbitrate Was Formed.

"The presumption favoring arbitration does not apply to th[e] preliminary question of [an] Arbitration Agreement's validity." *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 291 (4th Cir. 2022).  Instead, state contract law governs the formation of arbitration agreements. *Hill v. Peoplesoft USA, Inc.,* 412 F.3d 540 (4th Cir. 2005); *see also Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 178 (4th Cir. 2025) ("Whether an arbitration agreement was properly formed is 'a question of ordinary state contract law principles.'" (quoting *Rowland v. Sandy Morris Fin'l & Est. Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021))).  An agreement to arbitrate disputes is enforceable under Maryland law if it is a valid contract.¹⁰  *Hill,* 412 F.3d at 543; *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 660–62  (Md. 2003).  "Under Maryland law, the formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *Ford v. Genesis Fin. Sols., Inc.*, 726 F. Supp. 3d 441, 450 (D. Md. 2024) *aff'd* 2025 WL 1540933 (4th Cir. May 30, 2025) (internal quotation marks

---

⁹  As noted above, Trimble's Notice and the parties' subsequent filings related to that Notice constitute unauthorized surreplies in violation of Local Rule 103.6(a).  *See* Loc. R. 103.6(a).  The Court considers these filings but cautions the parties to observe the Local Rules, which "are binding on the parties and the court that promulgated them." *Muhammad v. Flemming*, 29 F.4th 161, 166 n.6 (4th Cir. 2022) (citing *Maritrans Operating Partners Ltd. P'ship v. M/V Balsa 37*, 64 F.3d 150, 154–55 (4th Cir. 1995)); *see also Jackson v. Beard*, 828 F.2d 1077, 1078 (4th Cir. 1987) (recognizing Local Rules consistent with the Federal Rules of Civil Procedure are binding upon parties and the court that promulgated them).  Trimble also filed an additional Notice (ECF No. 21) in which she cites an out-of-circuit District of Utah decision that applied Utah law and endorsed *Johnson. Watson v. EnableUtah*, et al., No. 1:24-CV-00176- JNP-JCB, 2025 WL 1638528 (D. Utah June 9, 2025).  The Court in its discretion declines to consider that filing (ECF No. 21) because it cites to non-binding caselaw applying Utah state law, while this action—including formation of an arbitration agreement—arises under Maryland law.
¹⁰ Both parties agree that Maryland law governs Trimble's challenge to the arbitration agreement. *See* (ECF No. 4 at 9–10; ECF No. 13 at 16).

omitted) (quoting *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013)).

As explained above, Trimble challenges the formation of the Arbitration Provision in this case by asserting that it lacked sufficient consideration under Maryland law. (ECF No. 13 at 19–20.) Specifically, she contends that the Arbitration Provision was supported by a mutual promise to arbitrate, but the Terms' Change Clause renders that promise illusory by allowing Entrata to unilaterally modify the Terms. (*Id.* at 20–28.) Entrata asserts that even if the Change Clause applies to the Arbitration Provision, it does not render illusory the mutual promise to arbitrate because changes to the terms did not become binding until Trimble accepted them by visiting the ResidentPortal. (ECF No. 16 at 11.) Entrata emphasizes that Trimble had notice of any changes because (1) the Terms are hyperlinked on the ResidentPortal login page; and (2) Trimble had to click the box that she agreed to the Terms to make her rent payment each of the six or seven times she paid rent via the ResidentPortal.[11] (*Id.* at 12–14.)

Maryland law dictates that an arbitration provision is "a 'severable contract that must be supported by adequate consideration'" beyond the consideration that supports the overall contract. *Ford*, 726 F. Supp. 3d at 450 (quoting *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 603 (4th Cir. 2013)). As Judge Boardman of this Court has aptly explained in the *Ford* case, "[c]onsideration exists if 'a performance or a return promise [is] bargained for,' and '[a] performance is bargained for if it is sought by the promisor in exchange for his . . . promise and is given by the promisee in exchange for that promise.'" *Id.* (alterations in original) (quoting

---

[11] Entrata also asserts that if the Court does not find an express restriction on Entrata's right to change the Terms, it should construe an implied restriction "to avoid finding that there was no contract between the Parties." (ECF No. 16 at 15.) The Court emphasizes that its decision in this Memorandum Opinion addresses *solely* the Arbitration Provision. The Court makes no findings, determinations, or conclusions as to whether there otherwise existed a contract between the parties.

*Pettiford v. Next Generation Tr. Serv.*, 226 A.3d 15, 27 (Md. 2000)).  Importantly, "[a] promise becomes consideration for another promise only when it constitutes a binding obligation." *Cheek* 835 A.2d at 661.  A promise is illusory—and thus cannot act as consideration—if it "appears to be a promise but [] does not actually bind or obligate the promisor to do anything." *Id.* at 661–62.  In the context of an arbitration agreement "[u]nder Maryland law, a promise to arbitrate is illusory . . . if [one party] reserves the right to 'alter, amend, modify, or revoke the Arbitration Policy . . . at any time with or without notice.'" *Coady*, 32 F.4th at 292 (quoting *Cheek*, 835 A.2d at 662).  Thus, a mutual promise to arbitrate constitutes sufficient consideration to form an enforceable arbitration provision only where it is binding on both parties.  *See Gordon v. Zeroed-In Tech., LLC*, Civ. No. BAH-23-3284, 2025 WL 941365, at *7 (D. Md. Mar. 26, 2025) (collecting cases); *Johnson*, 131 F.4th at 178 ("It is rudimentary contract law that an agreement lacks consideration, and is therefore never formed, when it consists entirely of illusory promises.")

Accordingly, under Maryland law, where a mutual promise to arbitrate forms consideration for an arbitration provision, a general modification provision will prevent formation of a binding arbitration agreement unless the modification provision imposes "limitations . . . adequate to create a binding obligation."  *Johnson*, 131 F.4th at 179 (quoting *Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547, 554 (Md. 2006)).  The Fourth Circuit has suggested that adequate limitations exist where a contract requires the modifying party to provide sufficient notice of modifications *and* the opportunity to reject those modifications before they become binding.  *Id.* at 180–81.  For example, a "contract that mandates advance, detailed notice," of any changes does not render illusory a mutual promise to arbitrate because

the notice requirement "constrains the modifying party by giving the other side a chance to end the contract before the change takes effect." *Id.* at 181; *see also Holloman* 894 A.2d at 554–56 (holding change clause that limited defendant's ability to make changes to a single day of the year with written notice 30 days in advance was sufficiently restrictive to preserve consideration); *DIRECTV, Inc. v. Mattingly*, 829 A.2d 626, 629, 634–35 (Md. 2003) (holding change clause did not render mutual promise illusory where it provided "[i]f changes are made, [Direct TV] will send [the customer] a written notice describing the change and its effective date" and "[i]f a change is not acceptable to [the customer], [he] may cancel [his] service"). Notably, the Fourth Circuit has concluded that providing "'notice' by posting an updated version of the [relevant] agreement on [a modifying party's] website" is not sufficient to preserve consideration because "it places no constraint on [the modifying party's] ability to escape its contractual obligations whenever it sees fit." *Johnson*, 131 F.4th at 180. Applying this analysis to the instant matter, the Court must determine: (1) whether the Change Clause applies to the Arbitration Provision; and, if so, (2) whether the Change Clause gives Entrata unfettered modification authority such that it renders illusory Entrata's promise to arbitrate.

As to the first step, the Terms' general Change Clause does in fact apply to the Arbitration Provision in this case. Although Maryland law generally treats arbitration clauses as severable contracts, courts must "'construe the contract as a whole' and decline 'to read each clause or provision separately.'" *Coady*, 32 F.4th at 291; *see also Cheek*, 835 A.2d at 664–65. *But see Hill*, 412 F.3d at 543 (construing separately an arbitration agreement that was a separate document). Accordingly, as the Fourth Circuit recently noted in the *Johnson* case, where a broader contract contains a modification provision applicable to all contract terms, courts

15

construe that clause to apply to an arbitration provision contained in the same contract document. 131 F. 4th at 179–80. In this case, the Change Clause appears several pages before the Arbitration Provision but refers broadly to the Terms. (ECF No. 4-4 at 4 ¶ 3.) By its plain language, the Change Clause binds users to "the version of this Agreement that is in effect on the date of [their] visit" and provides, "[t]his Agreement may change from time to time, so please review it when you visit [ResidentPortal]." (*Id.*) Neither the Change Clause nor the Arbitration Provision contain any language that would except the Arbitration Provision from the Change Clause's terms. *See* (ECF No. 4-4 at 4 ¶ 3, 14 ¶ 14). Thus, the Change Clause applies to the Arbitration Provision, meaning that Entrata retained the right to modify the terms of the Arbitration Provision.

As to the second step, whether the Terms constrained Entrata's unilateral modification authority in a manner sufficient to preserve consideration is slightly more complicated because the parties' interactions occurred via the Internet. Entrata argues that its modification right was not unilateral or unfettered because only Trimble could bind the parties to any changes by continuing to use ResidentPortal. *See* (ECF No. 19 at 2–3; ECF No. 4 at 12–13 (collecting cases enforcing browsewrap agreements); ECF No. 16 at 11–15). That is, Entrata asserts that its authority under the Change Clause was constrained because (1) it posted any changes to the Terms hyperlinked on the ResidentPortal login page; (2) it required Trimble to click her assent to the Terms each time she submitted a rent payment on ResidentPortal; and (3) the Terms became binding on Trimble only when she continued to use ResidentPortal. (ECF No. 19 at 2–3; ECF No. 4 at 12–13; ECF No. 16 at 11–15.) Trimble contends, however, that these constraints were not sufficient because no language in the Change Clause (1) requires Entrata

to meaningfully notify Trimble of changes; (2) requires Entrata to obtain Trimble's consent for changes; or (3) prohibits retroactive changes.  (ECF No. 13 at 23–29.)

As an initial matter, courts traditionally evaluate online contracts by sorting them into categories depending on whether they are browsewrap agreements or clickwrap agreements. "A clickwrap agreement is a dialogue box that appears on a webpage and requires that a user agree to certain terms before allowing the user to continue the website." *Hosseini v. Upstart Network, Inc.*, 2020 WL 573126, at *4 (E.D. Va. Feb. 5, 2020).  A "[m]odified or hybrid clickwrap agreement[]" exists "where the user must affirmatively manifest assent to agreements that are provided via hyperlink . . . ." *Id.*  "A clickwrap agreement differs from a 'browsewrap agreement,' which does not require a user to click a box or button indicating that he or she agrees to certain terms to use the website, but instead attempts to bind the user to hyperlinked terms simply through using the website." *Gordon*, 2025 WL 941365, at *9 (quoting *Am. Eagle Motors, LLC v. Copart of Conn., Inc.*, 2023 WL 123503, at *3 (E.D. Va. Jan. 5, 2023) (citation omitted)).  In this case, the parties entered a browsewrap agreement because the plain language of the Terms establishes that users are bound to the Terms upon their visit to ResidentPortal. *See* (ECF No. 16 at 11; ECF No. 4-4 at 4 ¶¶ 1, 3.)  Although users must click their assent to the Terms to submit a payment, by the time a user reaches the payment page, she is already bound to the Terms that existed at the time she initiated her visit to ResidentPortal.  *See* (ECF No. 4-4 at 4 ¶ 3.)  Accordingly, the Arbitration Provision and the Terms both constitute browsewrap agreements.[12]

---

[12] Entrata equivocates about whether the arbitration agreement constituted a clickwrap or browsewrap agreement.  Initially, it asserts that the arbitration agreement is a clickwrap agreement because users had to click their assent to the Terms before submitting a payment via ResidentPortal.  *See* (ECF No. 4 at 10–13).  In a

Entrata argues that this Court has applied Maryland law to uphold both browsewrap and clickwrap agreements against formation challenges. (ECF No. 4 at 12 (collecting cases).) Although courts frequently uphold browsewrap and clickwrap agreements under more relaxed notice requirements, the cases Entrata cites largely address such agreements in the context of challenges to mutual assent. *See Dhruva*, 131 F.4th at 152 ("In the internet context, the traditional notice inquiry focuses on the design and content of the relevant interface and asks whether it would put a reasonably prudent user on notice of a contract on offer and its terms." (quoting *Marshall*, 112 F.4th at 218–196)); *Lyles v. Chegg, Inc.*, Civ. No. RDB-19-3235, 2020 WL 1985043 (D. Md. Apr. 27, 2020) (upholding formation of clickwrap arbitration agreement without discussing consideration); *George v. Experian Info. Sols.*, Civ. No. LKG-23-2303, 2024 WL 3013146 (D. Md. June 14, 2024) (upholding formation of clickwrap arbitration agreement against challenge to mutual assent); *Zayanderoudi v. Nat'l R.R. Passenger Corp.*, Civ. No. TJS-22-2455, 2023 WL 4744746 (D. Md. July 25, 2023) (collecting cases upholding clickwrap agreements in context of challenge to plaintiff's assent).[13] These cases reveal that when evaluating the existence of mutual assent in an online contract, this Court analyzes whether a reasonably prudent person would appreciate the contract terms.

---

subsequent filing, however, it represents that the Terms constitute a "'browsewrap agreement,' whereby a party assents 'simply by using the website.'" (ECF No. 16 at 11 (quoting *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (citation omitted)).)

[13] In *Zayanderoudi v. National Railroad Passenger Corporation*, 2023 WL 4744746 (D. Md. July 25, 2023), the plaintiff also argued that a modification provision rendered illusory the mutual promise to arbitrate that constituted consideration for the arbitration agreement. *See id.* at *4. The Court concluded that the modification provision at issue was outside the four corners of the arbitration agreement such that it did not apply to that arbitration agreement. *Id.* This case, however, was decided before the Fourth Circuit's recent decision in *Johnson*, in which the Fourth Circuit held that Maryland law requires courts to apply a modification provision within the same contract document to an arbitration provision. 131 F.4th at 179.

As the Fourth Circuit recently made clear in *Johnson*, however, to preserve consideration despite a modification provision, Maryland law requires "an advance notice requirement" that "constrains the modifying party by giving the other side a chance to end the contract before the change takes effect." 131 F.4th at 180–81 (reviewing Maryland cases). Unlike the mutual assent analysis, therefore, this consideration analysis evaluates whether a modification provision's notice requirement sufficiently constrains any modifications. *Id.* Such focus on limited modification reflects that a party's broad ability to unilaterally modify an arbitration provision renders illusory the mutual promise acting as consideration for that provision. *Id.*; *see also Coady*, 32 F.4th at 292 (citing *Cheek*, 825 A.2d at 662).

While the Court is not aware of any cases addressing whether a browsewrap agreement was supported by sufficient notice to preserve consideration under Maryland law, the principles outlined in *Johnson* provide sufficient guidance.[14] No part of the Terms *required* Entrata to give advanced notice before a change became effective. The Change Clause provide no promise of advanced notice. *Compare* (ECF No. 4-4 at 4)  (informing users that the Terms "may change," and that the user must "review [the Terms] upon visiting"); *with Holloman*,  894 A.2d at 554–55 (requiring 30-days advanced notice of any changes). The relevant portion of the Agreement and Notices Clause similarly fails to require advanced notice of changes. Under that Clause, Entrata's promise to give "any notices regarding [ResidentPortal] by posting them [there],"

---

[14] Entrata asserts that Trimble "had actual notice of the Terms, and all subsequent versions" because its hyperlink to the Terms was "conspicuously displayed in the footer of the website's clean and minimalist layout." (ECF No. 16 at 12) (citing *Watkins v. Carr*, Civ. No. PX-17-0819, 2018 WL 10741730 (D. Md. Jan. 12, 2018)). While the case Entrata cites for this proposition did address notice in browsewrap agreements, it did so only for mutual assent, not consideration. *Id.* at *3. The remainder of the cases Entrata cites are out-of-circuit opinions that do not address Maryland contract law. (ECF No. 16 at 11–12); *see, e.g., Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014); *AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496 (W.D. Va. 2013).

(ECF No. 4-4 at 3 ¶ 1), requires no advanced notice. Rather, the Terms allow the same form of "post-hoc 'notice,'" *Johnson*, 690 F. Supp. 3d at 529, that the Fourth Circuit deemed insufficient to preserve consideration because "it places no constraint on [the modifying party's] ability to escape its contractual obligations whenever it sees fit," *Johnson*, 131 F.4th at 180. Indeed, under the Change Clause and Agreement and Notices Clause, when Trimble accessed ResidentPortal after Entrata updated its terms on April 24, 2024, she was bound to the updated version of the Terms the moment she accessed ResidentPortal.[15] (ECF No 4 at 6.) Thus, she had no "chance to end the contract before the change[s] took effect."[16] *Johnson*, 131 F.4th at 180-81. (ECF No. 4-1 ¶ 2.) Therefore, these clauses rendered illusory any mutual promise acting as consideration for the Terms and the Arbitration Provision. *Johnson,* 131 F.4th at 180–81; *see also Coady*, 32 F.4th at 292 (citing *Cheek*, 825 A.2d at 662).

Entrata's arguments in the alternative are unavailing. First, it argues that at the very least, the Change Clause includes an implied restriction on its ability to modify the agreement, and therefore the Arbitration Provision is enforceable. (ECF No. 16 at 15–16) (citing *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 670 (Md. 2009) (noting that "courts generally

---

[15] Although the Court does not know all the instances Trimble accessed ResidentPay, the parties represent that the latest date she utilized ResidentPortal to make a one-time rent payment was July 22, 2024. (ECF No. 4 at 6, 6 n.6 (citing ECF No. 2 ¶¶ 108, 110, 112, 114, 116).)

[16] Although Entrata argues that Trimble had the opportunity to click the hyperlink to the Terms before she logged into ResidentPortal—and thus could have reviewed the updated Terms before she entered ResidentPortal and became bound by them—no language in the Terms required Entrata to provide this hyperlink. That is, like the defendant entity in *Johnson*, by the plain language of the Terms, Entrata could have removed this hyperlink pursuant to its authority to modify any provision of the Terms without providing any advanced notice to Trimble. Accordingly, as in *Johnson*, this voluntary provision of potential advance notice does not constrain Entrata's modification authority in a manner sufficient to preserve consideration. *Johnson*, 131 F.4th at 180–81. Moreover, the Fourth Circuit in *Johnson* expressly rejected the assertion that posting updated terms on a website and allowing users to reject such terms by ceasing their use of a product provides sufficient notice to preserve consideration. *See Johnson*, 131 F.4th at 180 (explaining users' right to terminate account upon changes "is illusory because it exists only at [the defendant's] pleasure").

prefer a construction of a contract which will make the contract effective rather than one which will make it illusory or unenforceable.  To that end, if there is a restriction, express or implied, on the promisor's ability to perform, the promise is not illusory")).  Entrata notes that "Maryland contract law generally implies an obligation to act in good faith and deal fairly with the other party . . . to a contract," and claims that the changes it made were in good faith.  (*Id.*) (quoting *Questar*, 978 A.2d at 670).  While a court may use "the process of interpretation . . . [to] find implied promises to prevent a party's promise from being performable merely at the whim of the promisor," it must consider "[t]he nature of the promise to be implied[, which] will vary with the kind of transaction and the particular context surrounding the individual transaction." *Questar*, 978 A.2d at 670.  As previously discussed, this Court, the Fourth Circuit, and Maryland state courts have determined that the presence of a unilateral clause—such as the Change Clause at issue here—demonstrates no restriction, implied or express.  *See Johnson*, 690 F. Supp. 3d at 529–30; *Coady*, 32 F.4th at 292–93; *Cheek*, 835 A.2d at 662.  It does not matter whether a defendant "revoked []or in any way altered" a contract, let alone whether it did so in good faith.  *Cheek*, 835 A.2d at 662.  The critical inquiry is not whether changes occurred or were in good faith but whether one party retained "the right to change or abolish [contract terms] without notice . . . ."  *Coady*, 32 F.4th at 292; *see also Johnson*, 690 F. Supp. 3d at 530*, aff'd*, 131 F.4th 169.  Thus, no purported implied restriction saves the Arbitration Provision.

Second, Entrata argues that even if the Change Clause is unenforceable, the Court should "sever this section because it is not a central or essential provision to the Parties' agreement."  (ECF No. 16 at 16–17.)  A Court may sever an unlawful portion of a contract

"*only* if . . . the unlawful provision is not central or essential to the parties' agreement." *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 336 (4th Cir. 2017) (emphasis in original).  As the Fourth Circuit has explained, severability applies to challenges to a contract's validity but not to challenges to a contract's formation.  *Johnson*, 131 F.4th at 176.  That is, "when a contract contains some valid provisions and some invalid ones, the court must decide if it can sever the valid provisions and enforce the rest of the agreement."  *Id.*; *see also Ford v. Genesis Fin. Sols., Inc.*, 726 F. Supp. 3d 441, 450 (Md. 2024) (explaining distinction between formation and validity under Maryland law).  As explained above, the Change Clause in this case destroyed the consideration supporting the Arbitration Provision such that no agreement to arbitrate was formed.  Thus, as distinct from a case in which "an arbitration contract exists but is unenforceable due to defects in the underlying contract,"  *Bailey v. Mercury Fin., LLC*, 694 F. Supp. 3d 613, 621 (D. Md. 2023), in this case the parties never formed an arbitration agreement in the first instance.  *See Johnson*, 131 F.4th at 176–77 (distinguishing validity and formation challenges).  Put simply, severing the Change Clause in this case could make an *existing* but unenforceable arbitration agreement valid, but it cannot affect an arbitration agreement that was never formed because "[t]here is nothing to enforce if a contract never existed."  *Id.* at 176.  Accordingly, the parties did not form an agreement to arbitrate, and Entrata's Motion to Stay Proceedings and Compel Arbitration (ECF No. 4) is DENIED.[17]

---

[17]  As noted above, because the Court determines that no agreement to arbitrate was formed, the Court does not address Trimble's assertion of the prospective waiver doctrine.  As the Fourth Circuit has explained, "the Supreme Court has recognized that arbitration agreements that operate 'as a prospective waiver of a party's right to pursue statutory remedies' are not enforceable because they are in violation of public policy."  *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017)  (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)).  According to this "prospective waiver" doctrine, courts will not enforce arbitration agreements if doing so would prevent a litigant from vindicating substantive statutory rights.  *Id.* at

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (ECF No. 8) is WITHDRAWN AS MOOT, and Defendant's Motion to Stay Proceedings and Compel Arbitration (ECF No. 4) is DENIED. Defendant shall file a responsive pleading within fourteen days (i.e., by August 1, 2025) of the date of this Memorandum Opinion and Order.

A separate order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge

Dated: July 18th, 2025

---

334 (citations omitted). The prospective waiver doctrine is an issue of enforceability, however, and no arbitration agreement was ever formed in this case.